FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
4/15/2025 2:47 PM
KATINA WATSON
CLERK OF THE COURT
Yarid M Vasquez-Venegas

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

Alyssa Pearson,

        **Plaintiff,**

v.                                                                                   Case No.: ___D-202-CV-2025-03562___

New Mexico State University,
Board of Regents of New Mexico State (in their official capacity),
Dan E. Arvizu, Jay Gogue, Monica E. Torres, President and/or Chancellor of New Mexico State University
(in his official capacity),
New Mexico Department of Agriculture,
Jason New (Individually and in his official capacity),
Felicia Chacon Frost (Individually and in her official capacity),
Cheryl Mason (Individually and in her official capacity),
Anthony Para (Individually and in his official capacity),
Mari Longpre (Individually and in her official capacity),
Aisha Gutierrez (Individually and in her official capacity),
William Nutt (Individually and in his official capacity),
Desiree Stephens (Individually and in her official capacity),

        **Defendants.**



EXHIBIT 1

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, Alyssa Pearson, by and through her counsel, Law Office of Ryan D. Baughman, LLC (Ryan D. Baughman, Esq.), and Aguirre, Morelli, and Associates, and hereby submits her Complaint for Damages against Defendants, New Mexico State University, Board of Regents of New Mexico State (in their official capacity), Dan E. Arvizu, Jay Gogue, Monica E. Torres, as Presidents and/or Chancellors of New Mexico State University (in his/her official capacity), New Mexico Department of Agriculture, and Jason New (Individually and in his official capacity at the New Mexico Department of Agriculture), and Felicia Chacon Frost, Cheryl Mason, Anthony Para, Mari Longpre, Aisha Gutierrez, William Nutt, and Desiree Stephens (in their individual and official capacity). For her causes of action, Plaintiff alleges the following:

Page 1 of 16

## PARTIES AND JURISDICTION

1. Plaintiff Alyssa Pearson (hereinafter, "Plaintiff"), at all times relevant, was a resident of New Mexico, and many of the incidents alleged herein occurred in Bernalillo County, New Mexico.

2. Upon information and belief, Defendants, at all times relevant, were agencies of the State of New Mexico, or residents of New Mexico.

3. This action is brought under NMSA 1978, § 28-1-7 (2024) of the New Mexico Human Rights Act, The Americans with Disabilities Act of 1990 42 U.S.C. § 12101 et seq., and The Civil Rights Act of 1964 42 U.S.C. § 2000 et. seq. as amended. Plaintiff, Dr. Pearson, is a person with a documented disability specifically she has been diagnosed with Major Depression, Generalized Anxiety Disorder, ADHD and has been identified as fitting several of the overlapping diagnostic criteria of Autism Spectrum Disorder who is covered by the ADA; further, she is female and thus covered by The Civil Rights Act of 1964. Jurisdiction over Defendants is vested in this Court pursuant to NMSA 1978 § 38-3-1.1 (2024).

4. Many of the events giving rise to this Complaint occurred in Bernalillo County, New Mexico, and all events occurred within the State of New Mexico, or impacted Plaintiff in New Mexico.

5. Venue in Bernalillo County is proper pursuant to NMSA 1978, Sections 38-3-1 and 41-4-18(B).

## GENERAL ALLEGATIONS

6. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. All allegations contained herein are illustrative, not exhaustive, and Plaintiff reserves the right to amend this petition to add additional charges and information as discovery is ongoing and may lead to additional causes of action. Plaintiff reserves this right up to and including the start of the trial.

7. On or about December 1, 2022, Plaintiff was hired by the New Mexico Department of Agriculture as an Ag Marketing Specialist – Inter.

8. Plaintiff disclosed her disability to the Defendants in order to seek reasonable accommodations which are protected under the various acts cited above.

9. Defendants failed to or inadequately accommodate Plaintiff, Dr. Pearson.

10. Defendants engaged in a pattern of retaliation and harassment against Dr. Pearson for seeking to ensure she was both adequately accommodated, and that she could actually utilize her accommodations as requested.

## CAUSES OF ACTION

### COUNT I: DISCRIMINATION BASED ON DISABILITY
(as to all Defendants)

11. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs and adopts by reference each one as though they are fully set forth herein.

12. The elements of discrimination based on disability are: (1) that he [or she] is a disabled person within the meaning of the ADA; (2) that he [or she] is qualified ...; and (3) that the employer terminated him [or her] because of the disability. *See Trujillo v. Northern Rio Arriba Electric Cooperative, Inc*, 2002-NMSC-4, ¶ 8, P.3d 337.

13. Plaintiff, Dr. Pearson is disabled within the meaning of the ADA. She has been diagnosed with ADHD by Caroline G. Grandis, FNP of Winston-Salem, NC and Generalized Anxiety Disorder and Major Depression by Laura Ortega, CNP of Las Cruces, NM.

14. Plaintiff, Dr. Pearson, 2012 Outstanding Graduate of the NMSU College of Business and 2017 Ph.D. in Business Administration – Marketing from NMSU, is qualified as she had been vetted by a screening process, and her performance demonstrated that she produced quality work. For example, in less than 4 months after beginning her position, Alyssa, in consultation with the relevant NMDA, NMSU and USDA personnel, developed standard operating procedures, procurement guidelines and began purchasing for a program that NMDA staff had not been able to do in the prior 6 months since the award had been made (June 6, 2022). During that time, Plaintiff also worked with internal and external partners to draft LFPA+ which added approximately $2.8 million and a year of purchasing to the project. During this time, Plaintiff also began work on revising the Taste the Tradition/Grown with Tradition(R) Logo Program Guidelines, Logo Program Member Agreement, and drafting a relaunch marketing plan. This too was something that Jason New had indicated was stalled due to lack of qualified staff since COVID-19 (approximately March 2020). In less than 7 months after starting, and with constant consultation from Jason New, Felicia Frost, Real Time Solutions staff, and NMSU's legal team, as well as approval from Anthony Parra and Jeff Witte, Alyssa Pearson, Felicia Frost and Jason New had an approved plan and had relaunched our website/customer relationship management platform and were doing outreach to encourage people to re-sign agreements.

In addition to this, Plaintiff collaborated with another staff member (Gretchen Gilbert) to develop several processes for managing existing programs more efficiently, including an Activity Tracking Sheet for Specialty Crop Block Grant to facilitate smoother asynchronous work that is still in use by NMDA staff. Additionally, Plaintiff helped guide development of our online grants application

and reporting portal to ensure a simple user interface and appropriate examples to help guide responses based on frequent errors.

15. Plaintiff, Dr. Pearson was terminated because of her disability as evidenced by the following instances:

   A. December 1, 2023 - Plaintiff begins work at New Mexico Department of Agriculture and is assigned responsibilities related to coordinating the Local Foods Purchase Assistance Cooperative Agreement (LFPA) Program.
   B. December 16, 2023 – Plaintiff applied for a job as a program manager for the LFPA program that she had been the lead on since starting at NMDA.
   C. On or around January 6, 2023, Plaintiff requested guidance from Cheryl Mason on the process of obtaining an accommodation at NMDA. Cheryl Mason refers this request to OIE. Plaintiff sends request to OIE and receives forms that are required for NMDA/NMSU to complete the request.
   D. January 11, 2023, Plaintiff asked to work from home in the morning to try to coordinate this disability accommodation with her doctor and previous therapist (who work in the Eastern time zone) in a private space. This took 1.5 hours and Jason New requested that Plaintiff take annual leave for that time.
      a. Plaintiff contacted OIE and HR about whether this was considered employment related duties because she was coordinating paperwork required by NMSU/NMDA and both said this was up to her supervisor and offered no guidance.
      b. Ultimately, Jason New did not require Plaintiff to take leave.
   E. February 24, 2024 – During a meeting when Plaintiff was pitching the Taste the Tradition/Grown with Tradition® Logo Program relaunch (hereafter, "Logo Program"), Jeff Witte requested that Logo Program relaunch include site visits. When Plaintiff expressed concerns about the staffing expense for this request, Plaintiff was instructed to use student employees for this work. After the meeting, Plaintiff expressed concerns to Jason New about using 18- to 22-year-old students for solo site visits in state vehicles to rural, remote locations and was told to not worry about it. Plaintiff received no further advice or follow-up to affirm that policies were in place such that she should "not worry about it."
   F. Subsequent to February 24, 2023, and prior to March 20, 2023. – Plaintiff visited with Cheryl Mason to ask whether sending students for solo, overnight site visits to rural parts of New Mexico is within NMDA/NMSU policies for student employees before including this in the Logo Program relaunch plan and budget. Cheryl Mason had indicated in the New Employee Orientation and in subsequent meetings that she had an "open door policy" and that staff were welcome to come by without an appointment to discuss issues. When asked, Cheryl Mason could not find a specific policy but indicated that it would likely be against NMSU/NMDA policy for students to do solo, overnight trips in state vehicles.
   G. March 20, 2023, Plaintiff received an email from NMSU General Counsel Scott Field requesting a call to discuss the documents created for the Logo Program relaunch the

following day, March 21, 2023. Plaintiff did not initiate this contact but responded the same day to schedule the call.

H. March 21, 2023 – Scott Field called Plaintiff and the two discussed Mr. Field's recommendations for revisions. That afternoon, Plaintiff met with Jason New and Felicia Frost in the late afternoon in the upstairs conference room for their feedback and approval on the revisions.

I. March 22, 2023 – Based on Mr. New and Mrs. Frost's feedback, Plaintiff made edits and sent the revised document back to NMSU General Counsel. In this email, Plaintiff discussed the need for General Counsel to review the Logo Usage Guidelines that were still being finalized by the NMDA graphic designer.

J. Sometime between March 22nd, 2023 – March 28th, 2023 – Plaintiff met with Jason New and Felicia Frost to discuss suggestions additional revisions from NMSU General Counsel and get their feedback/sign off before scheduling with Jeff Witte and Anthony Parra for their sign off.

K. March 28th, 2023, Plaintiff met with Felicia Frost and Jason New in the Blue Room to discuss the eligibility guidelines and relaunch plan. Plaintiff once again brought up concerns about the expectation that students be used for solo site visits and this concern was dismissed.

L. March 29th, 2023, Jason New asked Plaintiff to come by his office before she left that day. He asked that Plaintiff remove the magnetic light cover she had hung up a few weeks prior as part of her accommodation that was still in process with OIE for over two months after her initial request. The light cover was critical to Plaintiff as she need it to deal with the over stimulation caused by the harsh lighting. This accommodation is normal for persons with Plaintiff's disability, it was reasonable, and was not a burden to the NMDA. Jason New suggested he was asking at the request of someone above him in the NMDA hierarchy. Plaintiff politely declined to remove the magnetic light cover without a definitive timeline for when the light cover or an alternative could be "reinstalled" and approval to work from home until then. Jason New refused this compromise and once again requested removal of the light cover, which Plaintiff once again refused unless the compromise was agreed to or a failure to remove would result in employment related consequences. Jason New indicated at this point that removal was not required and Plaintiff agreed to send the fire-safety certification of the light cover and complete ladder training.
   a. That evening after working hours, Plaintiff sent a follow up email showing she had completed her ladder training and formally requesting the cover as a temporary accommodation with product safety specifications for the light cover.
      i. A later request for work on her light in June 2023 due to an unrelated mechanical error took almost three weeks to be completed by facilities illustrating Plaintiff's concerns for work timeliness.
   b. Additionally, when NMDA staff came to Physical Science Laboratory (PSL) location after the demolition of the Espina Street building (approximately July 2023), a request was sent by the business manager, Tammy Bracamonte, for requests for accommodations regarding the lights in PSL due to multiple

       complaints about eye strain and headaches from staff now under the same lights with which Plaintiff was struggling.
- c. The light fixture cover in question had been hung for over a week during this time. However, Anthony Parra visited the PSL office building on March 28, 2024, and spent several minutes in the area near defendant's cubicle after which Jason New requested the cover's removal.

M. April 6, 2023 – During the Plaintiff's presentation of the Logo Program relaunch marketing plan to Anthony Parra with Jason New and Felicia Frost in attendance, she requested a full-time regular staff member to complete the site visits Secretary Witte had requested. Anthony Parra asked why there was no longer a plan to use students, and Plaintiff indicated, based on her understanding of the discussion with HR, that students taking solo, overnight trips was against NMSU policy for student employees. Anthony then asked Plaintiff "Who told you that" and Plaintiff responded "HR" and he responded, "Well, I override HR."

N. Sometime between April 7 – April 11, 2023 – Plaintiff received a call from Felicia Frost, in her capacity as Acting Division Director, where she was told that there was a directive from leadership that Plaintiff was no longer to contact HR directly and that all requests were to go through Division Director, Jason New.

O. April 11, 2023 – Anthony Parra sent Plaintiff an email accusing her of working with "Legal" (i.e., NMSU General Counsel Scott Field) to finalize documents without his authorization. On this day, Plaintiff requested to be taken off the Logo Program relaunch to avoid further hostile interactions with Anthony Parra. Felicia Frost asked Plaintiff not to do this, and said she, Felicia Frost, would respond to Anthony Parra clarifying that the documents had been reviewed by divisional staff but were not ready for leadership review, which Felicia Frost did that day. The interaction with Mr. Parra are indicative of the hostile environment Plaintiff experienced and a lack of willingness on the part of supervisors to accommodate Plaintiff's neurodivergent disabilities.

P. May 8, 2023 – Plaintiff and NMDA staff receive word from USDA that the LFPA+ amendment had been accepted and was ready for signature by NMDA leadership. On this document, Plaintiff is listed as the Program Manager with a Program Manager's class 7 salary budgeted.

Q. May 22, 2023 – Plaintiff received notification from NMSU to her personal email that the LFPA Program Manager position that Plaintiff had applied for on December 16, 2023, had been cancelled. The email indicated that the position would be reopened, and Plaintiff was encouraged to reapply.

R. May 29th, 2023 - Plaintiff met with Garrett Hargrove and discussed the position cancellation. Without revealing confidential information as a member of the search committee, Mr. Hargrove suggested that Plaintiff might be eligible for differential pay similar to what he had been receiving for working in Albuquerque while performing Business Manager duties at a higher pay grade than his current position as a Senior Accountant.

S. May 30th, 2023 – Plaintiff sent an email to Cheryl Mason Herrera requesting information on how to request differential pay on the basis that Plaintiff was performing job responsibilities of a class 7 employee (Program Manager) and was currently listed as a

      class 5 employee (Ag Marketing Specialist, Intermediate). Plaintiff requested any instructions Plaintiff may need to complete the request so that it would be finalized by the time Jason New returned from leave. This request was made directly to HR on the assumption that there would be documentation that Plaintiff would need to gather or forms to complete in order for HR to process the request in compliance with NMSU policy. Jason New was on leave that week but he was copied on the message.
   a. On May 30, 2023 – Cheryl Mason responds and provides no information on any steps Plaintiff needs to take to formally request differential pay, directing Plaintiff instead to Jason New as the person to process this request. Cheryl Mason copies Anthony Parra on this email.
T. June 14th, 2023 – Plaintiff received an email from Jason New that this request is under review, but no further information is requested.
U. June 20th, 2023 – Plaintiff sent out an internal email to #ALLNMDA requesting participation from coworkers in a social media campaign. Prior to the sending of this email, Plaintiff and four other NMDA colleagues had exchanged twenty emails revising the language of this email. During this lengthy exchange, Plaintiff forgot that the graphic template examples in the email had not yet been approved by senior leadership, which is not necessary for internal emails but is necessary before those graphics are posted online.
   a. Upon request from the graphic designer, Plaintiff sent an email clarifying the miscommunication about the approval of the graphic templates and apologized to Jeff Witte and Anthony Parra for sending the internal email prior to their approval.
V. July 6th, 2023 – Jason New requests a meeting the next day to discuss Plaintiff's differential pay request. Plaintiff agreed to his requested time and location.
W. July 7th, 2023 – Plaintiff met with Jason New regarding her differential pay request. During this meeting, Jason New denied Plaintiff's request for differential pay on the basis that she was not working any overtime, which was not the requested basis for differential pay according to class that had been provided by the Plaintiff. In this same meeting, Jason New gave Plaintiff a written version of a "verbal warning" outlining how her conduct violated the "efficient and ethical operations of NMSU." Plaintiff expressed serious concerns with the way this write up mischaracterizes her behavior and asked not to sign it. Plaintiff is told that if she signs it then, the warning will only exist in his internal files, but if she refused to sign it, it will go in her NMSU employee file. Given that Plaintiff was actively seeking work and that NMSU is the largest employer in Las Cruces for someone with her academic qualifications, she felt obligated to sign this warning to avoid these issues jeopardizing future employment opportunities. Included in this verbal warning are the above "incidents" regarding Plaintiff's reluctance to use student employees for solo, overnight site visits, Plaintiff's refusal to take down the light cover accommodation when asked by Jason New on March 28th, a description of her collaboration with legal on document revisions which mischaracterizes her actions as having gone around leadership in these discussions, and lastly, Plaintiff's mistake when sending out the #ALLNMDA email before the graphic templates had been approved.
   a. Later in a meeting, Plaintiff reiterated that her request for differential pay is not on the basis of overtime worked, but on the basis of misclassification of her

        responsibilities. Plaintiff requested an additional evaluation of the request for differential pay on the basis that she was performing class 7 responsibilities of a Program Manager and was listed as the "Program Manager" in the LFPA+ project as it had been approved by USDA.

    b. Plaintiff informed Jason New during this meeting that it was her intention to discuss options for remediation with the Office of Institutional Equity about this "verbal warning." Since the verbal warning was provided in conjunction with the denial of differential pay, the Plaintiff wanted to ensure that protected activities were not being used as a basis for denying pay increases or opportunities for advancement.

X. July 7, 2023 – Plaintiff's temporary accommodation expires. This is the only signed, written accommodation the Plaintiff received during her time at NMDA.

Y. July 17, 2023 – Plaintiff makes a formal complaint against NMDA, and Anthony Parra in particular, for disability discrimination using the portal provided by OIE.

Z. Between July 7, 2023, and July 21, 2023 – Plaintiff met with OIE to discuss the need for an expanded permanent disability accommodation that NMDA provide more instructions in writing to avoid future reprimands for misunderstandings. Plaintiff specifically requested project management software to help manage workflows to avoid additional incidents like the #ALLNMDA email for which she was written-up and a request that directives be given in writing, with clear steps for approval, to prevent further characterizations of the Plaintiff's actions as being insubordinate, as opposed to a misunderstanding of verbal instructions. This request was made given the anxiety and differences in communication neurodivergent (individuals with a variety of disorders including depression, ADHD, and generalized anxiety) workers often experience in the workforce. These disorders are all covered under the ADA.

AA. July 21, 2023 – Plaintiff had a site visit with Jason New at La Semilla in Anthony, NM. Jason New had previously indicated that NMDA's relationship with La Semilla was not as strong as it had been previously and asked that Plaintiff take steps to repair this relationship. During this site visit, Plaintiff and the current director of La Semilla, Cristina Dominguez, discussed the difficulties of trying to get contractors to work with us as women in Southern New Mexico. Plaintiff related a story about a difficult contractor from her time as an agricultural business consultant outside of her work at NMDA to show empathy with the experiences of La Semilla. Plaintiff had previously observed NMDA staff relate their experiences in their personal pecan orchards, farms, and ranches to constituents in order to build rapport based on shared experiences of the difficulties one faces in agriculture and believed this was an acceptable way to relate to constituents on that basis. This was subsequently used against Plaintiff in retaliation for her seeking to utilize her accommodations.

BB. August 1, 2023 – Plaintiff requested to work from home in line with her accommodation and provides specific tasks that will be completed while she is working from home, and is told by Jason New, in violation of her accommodation, that the tasks she is requested can be completed in the office and she is instructed to come in to the office despite her detailed explanation of why she needs to work remotely for these tasks.

CC. August 11th, 2023 – Jason New requested a meeting in his office. During this meeting, he informed Plaintiff that NMDA is cancelling the Program Manager position on which she was basing her request for differential pay, and that b) Plaintiff would not be receiving differential pay. During this meeting Jason New also provided Plaintiff with another verbal reprimand mischaracterizing an awkward conversation she had with a custodian and for using her government position to solicit consulting clients during aforementioned site visit with La Semilla when discussing difficulties with contractors as women. Plaintiff denies that a fair interpretation of the conversation she had with a custodian was inappropriate and based on her well documented disabilities was something that should have been viewed in light of her disabilities, and based on information and belief that Jason New was using the interaction as a ruse to retaliate for her requested accommodations and differential pay. Further, Plaintiff denies the characterization that Mr. New used to define the La Semilla meeting, and based on information and belief that this was another ruse to retaliate against Plaintiff.

DD. On or around August 17, 2023 - Plaintiff met with Aisha Guitierrez on Zoom to discuss her complaint against NMDA for disability discrimination.

EE. Sometime in August/September – Jason New and Anthony Parra meet with Mari Longpre in OIE to discuss Plaintiff's accommodations. In this meeting, Anthony Parra refuses the request for project management software, and refused both options for reducing miscommunications about requested work including an accommodation that either minutes be taken or that Plaintiff be allowed to record meetings to allow Plaintiff to perform her work duties better. These requests by Plaintiff are all reasonable under the ADA and New Mexico Law.

FF. September 14, 2023 – Plaintiff received notification from Accreditation, Outcomes & Academic Planning that she has an electronic effort certification due to document the percentage of effort she has performed in each of her paid responsibility categories including the LFPA+ grant, Specialty Crop Block Grant program, and/or General Fund Appropriations for other duties. Plaintiff responded to this email that she cannot complete the electronic effort certification as it had been provided by Felicia Frost because it misrepresented her effort allocation percentages and job title and Plaintiff was unwilling to lie on certification documents that would be sent to USDA. Plaintiff also communicated that she did not feel comfortable bringing a request for change to a supervisor as would normally occur because of an active complaint against NMDA for disability discrimination which named both Jason New and Felicia Frost. Without Plaintiff's consent, Laurie Leyva from Accreditation, Outcomes & Academic Planning forwarded this message to Anthony Parra thus notifying him, prior to OIE, about the forthcoming notice of allegations.

GG. September 15th, 2023 – Jason New called Denise Miller, the Executive Director of the New Mexico Farmers' Marketing Association and a key partner on the New Mexico LFPA program, while at the airport. He informs her that NMDA now has approximately $190,000 available on LFPA project and asks her if she can spend that funding.
   a. That $190,000 accounts for removing the Program Manager position and redirecting a substantial portion of the personnel funding from both that position and the Program Specialist position held by Gretchen Gilbert.

  b. During this call, Jason New also requested information about unprofessional behavior by the Plaintiff from Denise Miller.
  c. The amendment to reallocate these funds was coordinated over the next few weeks. Despite the Plaintiff playing a key role in the LFPA+ amendment, Plaintiff was only brought in for one discussion pertaining to these changes. Jason New mentioned to Plaintiff that it was his intention to lower the effort for Plaintiff and Gretchen Gilbert's positions from 85% to 30% for LFPA-related responsibilities. Plaintiff strongly objected given that Gretchen Gilbert was leaving in late Spring 2024 to move to Florida and that NMDA was unlikely to be able to replace her with someone as efficient. Plaintiff also expressed concerns about the person in her position being able to adequately oversee the work of the program and the replacement program specialist at only 30% effort. Based on information, belief, and witness testimony it is Plaintiff's position that these actions were taken in retaliation for her requests for accommodation both to the OIE and Jason New.

HH. September 25, 2023 – Jason New attends the first LFPA Task Force meeting since January 2023. He was listed as the Primary Investigator on this grant; however, Plaintiff had been taking the lead on all meetings and general activities of the program between January 2023 and September 2023 prior to NMDA leadership being informed of the impending Notice of Allegations from Accreditation, Outcomes & Academic Planning. Jason's only leadership activity on the program between January 2023 and September 25, 2023, was providing revisions upon request or signing off on certain initiatives and activities as they were presented by Plaintiff or Program Specialist Gretchen Gilbert.

II. September 26, 2023 - OIE delivers the Notice of Allegations of a lack of accommodation and retaliation to NMDA.

JJ. October 2, 2023 – Plaintiff indicated an intention to work from home to Felicia Frost in line with the requirements of her accommodation. Plaintiff was told that Felicia Frost will need to verify "coverage" before granting the work-from-home request. Plaintiff pushed back and indicates that coverage is irrelevant to her request. Plaintiff submits a request for clarification from OIE because her accommodation is not being honored, and Mari Longpre responded that the need for "coverage" does not pertain to Plaintiff's need for accommodation and should not factor into supervisor decisions about whether Plaintiff can work from home.

KK. November 28th, 2023 – Plaintiff received a request from Jason to come in the following morning for a meeting to discuss her probationary evaluation. Plaintiff requested that an OIE rep familiar with her Notice of Allegations be present because she is concerned about discrepancies in how Jason New has verbally related information that was not captured in written documents during the previous two warning meetings she had attended. This request is denied, and Plaintiff is offered an HR rep instead. Plaintiff expressed discomfort with the short notice, unfamiliarity of the HR rep offered with the Notice of Allegations, and a desire not to come into the office for this discussion, knowing it would likely leave her in emotional distress based on previous warnings she had received. This request is denied. This request was a reasonable accommodation based on Plaintiff's well

      documented disabilities and based on information, belief, and witness testimony was made in retaliation for her seeking to ensure her accommodations.

          a.   This episode and denial of the request caused physical manifestations of symptoms common in persons with ADHD, generalized depression, and neurological disorders such as Autism Spectrum Disorders such that Plaintiff was up all night crying, hyperventilating, and experiencing heart palpitations and gastrointestinal distress and called in sick the next day, November 29, 2023.

LL. November 30th, 2023 – Plaintiff receives a written copy of her evaluation via email from Jason New. This evaluation extends the Plaintiff's probationary period for another 6 months and included numerous personal grievances against the Plaintiff starting in or around September 15, 2023 – the date when NMDA is notified by Accreditation, Outcomes & Academic Planning that the Plaintiff is filing an OIE complaint against the department. Unlike other performance evaluations the Plaintiff and colleagues received during her time at NMDA, Jason New did not seek information about the activities performed by the plaintiff during this time, and the evaluation contained only a few references to the actual work performed by the Plaintiff during her first year of employment at the agency. Instead of reporting on work performed, Plaintiff is described as "condescending," "rude," and "not a team player" with justifications often referencing behaviors commonly found in people with ADHD, or times when the Plaintiff was advocating for the fair utilization of her accommodation such as the incident with the light cover, the incident with Felicia Frost needing "coverage," and incidents at State Fair when Plaintiff was overstimulated with a lack of privacy and non-stop verbal commands with no written instructions. Based on the evidence referenced in this evaluation, most of the determinations of performance in this evaluation seem to be based on complaints from staff within the division, not based on the "Individual Goals" or the measurements of their completion as agreed upon in the first evaluation received. Plaintiff perceives this as evidence of "workplace mobbing" – a tactic of hostile workplaces to force people with disabilities to quit in lieu of offering them reasonable accommodation and equal opportunities.

MM.   Sometime between December 1, 2023 and December 15, 2023 – Plaintiff called OIE and asks what is needed to obtain "Supportive Measures" as they are outlined in ARP 3.25, Part 7 as her rights as a "Complainant" because of extreme emotional distress resulting from her probationary evaluation which she believes is retaliatory. Plaintiff requested information about what is required for an expanded disability accommodation or a temporary leave of absence because she is experiencing an increase in symptoms related to her Generalized Anxiety Disorder after receiving her probationary evaluation. Rejection dysphoria is a common symptom of ADHD and is triggered by personal attacks such as those placed in her permanent employee file through the probationary evaluation and potentially jeopardizing future employment opportunities at NMSU. Not wishing to be subject to increased scrutiny from colleagues during a period of intense emotional distress, Plaintiff asks what is needed to take a leave of absence and receive an expanded accommodation as part of her supportive measures. Based on instructions from OIE, Plaintiff goes to her primary care provider, Laura Ortega, and requested a letter detailing

the need for greater work from home. After submitting this letter and submitting it to OIE, OIE indicates that they cannot accept this letter and that the Plaintiff needs to get a new form completed. To the best of Plaintiff's knowledge, no supportive measures were ever specifically offered to her during this time as a Complainant, simply the standard OIE accommodation process.

NN. December 7, 2023 – Plaintiff files her case with the Equal Employment Opportunity Commission.

OO. December 21, 2023 – Plaintiff emails HR and CC's Mari Longpre with OIE with detailed information about how the probationary evaluation was inaccurate and retaliatory on the basis of disability and an ongoing complaint. Donna Ottaviano, the Director of People Relations, replies that afternoon that probationary evaluations are "not subject to appeal" thus suggesting that NMSU's policy for people with disabilities is that they have no pathway to remediation should they face disability discrimination in the first year of employment should they report that discrimination and face retaliation.

PP. January 2024 – Laura Ortega, CNP completes the required form for the expanded disability accommodation based on symptoms reported by the Plaintiff in a visit. As of the Plaintiff's termination on May 30, 2024, no changes had been made to the Plaintiff's disability accommodation based on this form, or the previous requests made in July 2023. In the 10 months between the expiration of her temporary accommodation and Plaintiff's, NMDA had effectively denied Plaintiff reasonable accommodations for a documented disability and had only made 5 attempts to negotiate expanded accommodation. During this time, Plaintiff feels pressured to be in the office at least 3 days a week to avoid further retaliation and frequently goes into the office experiencing extreme emotional distress and is forced to relieve gastrointestinal distress in a shared bathroom, and cries in her cubicle that is within 15 feet of 5 coworkers at least once weekly. Plaintiff is prescribed anti-depressants and beta blockers to try to manage her symptoms in order to be able to continue working without expanded accommodation.

QQ. February 9, 2024 – EEOC conducts a phone interview with Plaintiff about the details of her complaint.

RR. February 13, 2024 – EEOC gives notice to NMDA/NMSU of Plaintiff's complaint.

SS. February – March 2024 - Two offers for expanded accommodation are given by NMDA through OIE to the Plaintiff but include unacceptable changes that allow management to rescind accommodation at their discretion without prior notice. Most notably, a request that the Plaintiff use an "Alternative Work Arrangement" form – a form which explicitly notes at the top that it is NOT to be used for disability accommodations because it concerns a fixed schedule. Additionally, NMDA agrees to improve minutes taken at division meetings, and agrees to the need for project management software, but refuses to commit to a plan to provide instructions to the Plaintiff in writing for tasks, or to a project management software platform for which NMDA/NMSU has an active license.

TT. Sometime between March 1, 2024 and March 21, 2024 – Jason New informs Plaintiff that her annual evaluation is coming up and requested a meeting. Given the contents of the previous evaluation, Plaintiff strongly suspects this will be another retaliatory evaluation and requests that she not be forced to meet about this evaluation without it being counted further against her in her performance evaluation. This request is denied by Jason New. In lieu of not meeting, the Plaintiff requests either permission to record the meeting, or a "neutral" NMSU/OIE staff member be made available for this meeting. Plaintiff considers "neutral" to be someone whom Anthony Parra does not have hiring/firing power over and is not a named party in the initial OIE complaint. Office of People Relations (NMSU's HR office) refuses to offer a neutral staff member. OIE also refuses to offer a neutral staff member. NMDA refuses to allow Plaintiff to record the meeting. Ultimately, Julie Maitland, one of the longest tenured division directors at NMDA, arguably the 3rd ranked person in the organization behind Jeff Witte and Anthony Parra, who had worked with Jason New for over 15 years and whom Plaintiff had never met, was offered as the "neutral" witness.

UU. March 28, 2024 – Plaintiff met over Zoom with Jason New and Julie Maitland about her annual evaluation. Plaintiff contests several of the ratings provided in the annual evaluation and provides evidence substantiating that ratings were not an accurate reflection of the quality of her work. Jason New agrees that several of the performance metrics should be raised given this evidence, but notably refuses to raise ratings related to service quality – despite frequent praise from external collaborators about her performance, as well as the ratings pertaining to "Valuing Diversity and Inclusion" – despite her own membership in a protected class. While Jason New promised to update this evaluation based on the discussions during this meeting, a final copy is never received by the plaintiff prior to her termination.

VV. April 11, 2025 – Plaintiff receives notification that an NMSU branch campus in Alamogordo would not be hiring her as faculty. Plaintiff has reason to believe that NMSU – Alamogordo hiring committee staff may have shied away from her as a candidate after the site visit because of the probationary evaluation placed in her file which she was unable to appeal.

WW. May 30, 2024 – Plaintiff's last day employed with NMDA.

XX. July 2024 – NMDA posts an Ag Marketing Specialist position performing many of the duties performed by the Plaintiff in regard to the Logo Program and the LFPA program. This position is posted as a class 8 position, one classification higher than the differential pay that had been requested by the Plaintiff in 2023 while performing those duties.

## COUNT II: DISCRIMINATION BASED ON GENDER
### (as to all Defendants)

16. The elements of discrimination based on Gender are: (1) the plaintiff is a member of the protected group (female); (2) that she was qualified to continue in his position; (3) that her

employment was terminated; (4) and that his position was filled by someone not a member of the protected class or if she can show that she was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained. *See Smith v. FDC Corp.*, 1990-NMSC-20, ¶2, P2d 437.

17.     Dr. Pearson was terminated because of her gender (female) as evidenced by the following instances:

A. Despite frequent references to her passion for grilling meat, Plaintiff is never invited to join the grilling team at NMDA-hosted events. The grilling team at NMDA-hosted events is exclusively male, while the decorating, serving and dish-washing teams are almost exclusively women with the occasional male student helpers.

B. Plaintiff is reprimanded for not being a "team player" in her probationary evaluation for not helping with the annual conference planning committee or other "optional" responsibilities. The NMDA annual conference planning committee is run almost exclusively by female employees at NMDA and in 2024 only had a single male member whose wife was on the committee such that serving on the committee allowed him to spend time with his wife during working hours.

C. NMDA systematically denies women opportunities for advancement or fair compensation for duties performed and retaliated against Plaintiff for not being a "team player" when she requested fair compensation, differential pay, and a workload commensurate with her classification level.

D. During Plaintiff's time at ODA, only two of eight division directors were female, every program coordinator – the lowest non-student, non-temporary classification - was female, and the vast majority of crop and fuel inspectors were male.

E. During Cheryl Mason Herrera's testimony for the OIE complaint, she alleges that the Plaintiff gave her and Anthony Parra "dirty looks" after the "I overrule HR" incident because the Plaintiff

had a neutral, non-smiling face when Plaintiff encountered Cheryl Mason and Anthony Parra. Cheryl Mason Herrera also testified that the Plaintiff's inquiry about student employee travel had an "aggressive tone" when Plaintiff expressed concern about the lack of leadership's concern regarding students traveling overnight, without supervision in state vehicles to remote, rural areas. These characterizations suggest that NMDA leadership held expectations for Plaintiff, as a female employee, that she smile and perform friendliness in order for her actions to be received positively by human resources and senior leadership.

F. In the 2 years that the entire NMDA staff have been at the PSL location, multiple issues have been raised about the lighting in PSL, and accommodations have not been uniformly provided. Non-managerial female staff have been reprimanded for not going through proper channels to adjust their lighting, while senior male managers have been able to turn off and adjust lights in their program areas without going through facilities without consequence.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. Award actual and compensatory damages sufficient to make Plaintiff whole;
B. Award punitive damages in an amount to be determined at trial
C. Award pre- and post-judgment interest as provided by law;
D. Award attorney fees, litigation expenses, and costs;
D. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**LAW OFFICE OF
RYAN D. BAUGHMAN, LLC**

*Ryan D. Baughman*
Ryan D. Baughman, Esq.
814 Marquette Ave NW
Albuquerque, NM 87102
(505) 675-0732
Ryan@NMLawOffice.com
*Attorney for Plaintiff*