**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**Alyssa Pearson,**

       **Plaintiff,**

v.                                                                     Civ. No. 1:25-cv-570

**The New Mexico State University,**
**The Board of Regents of New Mexico State (in their official capacity),**
**Dan E. Arvizu, Jay Gogue, Monica E. Torres, President and/or Chancellor of New Mexico State University**
**(in his official capacity),**
**The New Mexico Department of Agriculture,**
**Jason New (Individually and in his official capacity),**
**Felicia Chacon Frost (Individually and in her official capacity),**
**Cheryl Mason (Individually and in her official capacity),**
**Anthony Parra (Individually and in his official capacity),**
**Mari Longpre (Individually and in her official capacity),**
**Aisha Gutierrez (Individually and in her official capacity),**
**William Nutt (Individually and in his official capacity),**
**Desiree Stephens (Individually and in her official capacity),**

       **Defendants.**

## AMENDED COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, Alyssa Pearson, by and through her counsel, Law Office of Ryan D. Baughman, LLC (Ryan D. Baughman, Esq.), and Aguirre, Morelli, and Associates, and hereby submits her Complaint for Damages against Defendants, The New Mexico State University, The Board of Regents of New Mexico State (in their official capacity), Dan E. Arvizu, Jay Gogue, Monica E. Torres, as Presidents and/or Chancellors of New Mexico State University (in his/her official capacity), The New Mexico Department of Agriculture, and Jason New (Individually and in his official capacity at the New Mexico Department of Agriculture). For her causes of action, Plaintiff alleges the following:

## PARTIES AND JURISDICTION

1. Plaintiff Alyssa Pearson (hereinafter, "Plaintiff"), at all times relevant, was a resident of New Mexico, and many of the incidents alleged herein occurred in Bernalillo County, New Mexico.

2. Upon information and belief, Defendants, at all times relevant, were agencies of the State of New Mexico, or residents of New Mexico.

3. This action is brought under NMSA 1978, § 28-1-7 (2024) of the New Mexico Human Rights Act and the New Mexico Civil Rights Act, NMSA §§ 41-4A-1 to -13 (2021). Plaintiff, Dr. Pearson, is a person with a documented disability, specifically she has been diagnosed with Major Depression, Generalized Anxiety Disorder, ADHD and has been identified as fitting several of the overlapping diagnostic criteria of Autism Spectrum Disorder who is covered by the New Mexico Human Rights Act; further, she is female which is a protected class under the New Mexico Human Rights Act.

4. Jurisdiction over Defendants is vested in this Court pursuant to NMSA 1978 § 38-3-1.1 (2024) and NMSA 1978 § 41-4-18(A).

5. Many of the events giving rise to this Complaint occurred in Bernalillo County, New Mexico, and all events occurred within the State of New Mexico, or impacted Plaintiff in New Mexico.

6. Venue in Bernalillo County is proper pursuant to NMSA 1978, Sections 38-3-1 and 41-4-18(B).

## GENERAL ALLEGATIONS

7. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. All allegations contained herein are illustrative, not exhaustive, and Plaintiff reserves the right to amend this

petition to add additional charges and information as discovery is ongoing and may lead to additional causes of action. Plaintiff reserves this right up to and including the start of the trial.

8. On or about December 1, 2022 Plaintiff was hired by the New Mexico Department of Agriculture as an Ag Marketing Specialist – Inter.

9. Plaintiff disclosed her disability to the Defendants in order to seek reasonable accommodations which are protected under the New Mexico Human Rights Act cited above.

10. Defendants failed to or inadequately accommodate Plaintiff, Dr. Pearson.

11. Defendants engaged in a pattern of retaliation and harassment against Dr. Pearson for seeking to ensure she was both adequately accommodated, and that she could actually utilize her accommodations as requested.

## CAUSES OF ACTION

### COUNT I: DISCRIMINATION BASED ON DISABILITY
### (as to all Defendants)

12. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs and adopts by reference each one as though they are fully set forth herein.

13. The elements of discrimination based on disability are: (1) that he [or she] is a disabled person within the meaning of the New Mexico Human Rights Act; (2) that he [or she] is qualified ...; and (3) that the employer terminated him [or her] because of the disability. *See Trujillo v. Northern Rio Arriba Electric Cooperative, Inc*, 2002-NMSC-4, ¶ 8, P.3d 337.

14. Plaintiff, Dr. Pearson is disabled within the meaning of the New Mexico Human Rights Act. She has been diagnosed with ADHD by Caroline G. Grandis, FNP of Winston-Salem, NC. Further, she has been diagnosed with Generalized Anxiety Disorder and Major Depression by Laura Ortega, CNP of Las Cruces, NM. These conditions affect major life functions including but not limited to the ability to focus in environments with high levels of stimulation.

15. The plaintiff was able to perform the essential functions of the job with reasonable accommodations. Defendants consistently denied the plaintiff reasonable accommodations and they attempted to limit her ability to utilize her accommodations.

16. Plaintiff, Dr. Pearson, 2012 Outstanding Graduate of the NMSU College of Business and 2017 Ph.D. in Business Administration – Marketing from NMSU, is qualified as she had been vetted by a screening process, and her performance demonstrated that she produced quality work. For example, in less than 4 months after beginning her position, Dr. Pearson, in consultation with the relevant NMDA, NMSU and USDA personnel, developed standard operating procedures, procurement guidelines and began purchasing for a program that NMDA staff had not been able to do in the prior 6 months since the award had been made (June 6, 2022). During that time, Plaintiff also worked with internal and external partners to draft LFPA+ which added approximately $2.8 million and a year of purchasing to the project.

17. During this time, Plaintiff also began work on revising the Taste the Tradition/Grown with Tradition(R) Logo Program Guidelines, Logo Program Member Agreement, and drafting a relaunch marketing plan. This too was something that defendant Jason New had indicated was stalled due to lack of qualified staff since COVID-19 (approximately March 2020). In less than 7 months after starting, and with constant consultation from Jason New, Felicia Frost, Real Time Solutions staff, and NMSU's legal team, as well as approval from Anthony Parra and Jeff Witte, Alyssa Pearson, Felicia Frost and Jason New had an approved plan and had relaunched our website/customer relationship management platform and were doing outreach to encourage people tore-signagreements.

18. Further, Plaintiff collaborated with another staff member (Gretchen Gilbert) to develop several processes for managing existing programs more efficiently, including an Activity

Tracking Sheet for Specialty Crop Block Grant to facilitate smoother asynchronous work that is still in use by NMDA staff. Additionally, Plaintiff helped guide the development of an online grants application and reporting portal to ensure a simple user interface and appropriate examples to help guide responses based on frequent errors.

19. Plaintiff, Dr. Pearson was terminated because of her disability as evidenced by the following instances:

   A. On December 1, 2023, Plaintiff began work at New Mexico Department of Agriculture and was assigned responsibilities related to coordinating the Local Foods Purchase Assistance Cooperative Agreement (LFPA) Program.
   B. On December 16, 2023, Plaintiff applied for a job as a program manager for the LFPA program that she had been the lead on since starting at NMDA.
   C. On or around January 6, 2023, Plaintiff requested guidance from Cheryl Mason on the process of obtaining an accommodation at NMDA. Cheryl Mason refered this request to OIE. Plaintiff sent the request to OIE and received forms that are required for NMDA/NMSU to complete the request.
   D. On January 11, 2023, Plaintiff asked to work from home in the morning to try to coordinate this disability accommodation with her doctor and previous therapist (who work in the Eastern time zone) in a private space. This took 1.5 hours and Jason New requested that Plaintiff take annual leave for that time.
      a. Plaintiff contacted OIE and HR about whether this was considered employment related duties because she was coordinating paperwork required by NMSU/NMDA and both said this was up to her supervisor and offered no guidance.
      b. Ultimately, Jason New did not require Plaintiff to take leave.
   E. On February 24, 2024, during a meeting when Plaintiff was pitching the Taste the Tradition/Grown with Tradition® Logo Program relaunch (hereafter, "Logo Program"), Jeff Witte requested that Logo Program relaunch include site visits. When Plaintiff expressed concerns about the staffing expense for this request, Plaintiff was instructed to use student employees for this work. After the meeting, Plaintiff expressed concerns to Jason New about using 18- to 22-year-old students for solo site visits in state vehicles to rural, remote locations and was told to not worry about it. Plaintiff received no further advice or follow-up to affirm that policies were in place such that she should "not worry about it."
   F. Subsequent to February 24, 2024, and prior to March 20, 2023, Plaintiff visited with Cheryl Mason to ask whether sending students for solo, overnight site visits to rural parts of New Mexico is within NMDA/NMSU policies for student employees before including this in the Logo Program relaunch plan and budget. Cheryl Mason had indicated in the New Employee Orientation and in subsequent meetings that she had an "open door policy" and that staff were welcome to come by without an appointment to discuss issues.

- When asked, Cheryl Mason could not find a specific policy but indicated that it would likely be against NMSU/NMDA policy for students to do solo, overnight trips in state vehicles. As an individual with a generalized anxiety disorder following policy is extremely important to Plaintiff.
- G. Sometime in or around March 2023, during a meeting discussing the LFPA, Jason New described one of the external partners on the project as being "on some type of spectrum" because of the external partner's passioned advocacy for policies that would benefit LFPA and New Mexico producers. After this description, Mr. New laughed out loud as though being on the "spectrum" was a source of comedy for Mr. New. This was one of the first incidents where Plaintiff realized that neurodivergence such as hers was regarded by her supervisor as the punchline of a joke.
- H. On March 20, 2023, Plaintiff received an email from NMSU General Counsel Scott Field requesting a call to discuss the documents created for the Logo Program relaunch the following day, March 21, 2023. Plaintiff did not initiate this contact but responded the same day to schedule the call.
- I. On March 21, 2023, Scott Field called Plaintiff and the two discussed Mr. Field's recommendations for revisions. That afternoon, Plaintiff met with Jason New and Felicia Frost in the late afternoon in the upstairs conference room for their feedback and approval on the revisions.
- J. Based on Mr. New and Mrs. Frost's feedback, Plaintiff made edits and sent the revised document back to NMSU General Counsel on March 22, 2023. In this email, Plaintiff discussed the need for General Counsel to review the Logo Usage Guidelines that were still being finalized by the NMDA graphic designer.
- K. Beginning on or about March 22, 2023 and continuing until approximately March 28th, 2023, Plaintiff met with Jason New and Felicia Frost to discuss suggestions additional revisions from NMSU General Counsel and get their feedback/sign off before scheduling with Jeff Witte and Anthony Parra for their sign off. The foregoing facts highlight that Plaintiff was satisfactorily performing her essential job functions while seeking accommodations. Further, this highlights that Plaintiff was following the appropriate chain of command, procedures and protocols. Following such standard operating procedures is necessary for individuals with a generalized anxiety disorder.
- L. On March 28th, 2023, Plaintiff met with Felicia Frost and Jason New in the Blue Room of the Physical Science Laboratory to discuss the eligibility guidelines and relaunch plan. Plaintiff once again brought up concerns about the expectation that students be used for solo site visits and this concern was dismissed. As an individual with generalized anxiety disorder Plaintiff had a reasonable concern about following policy. Defendants' response reflected a failure to understand Plaintiff's disability and the need for clear and unambiguous communication. Further, Defendants retaliated against Plaintiff for her request to follow agency policies.
- M. On March 29, 2023, Jason New asked Plaintiff to come by his office before she left that day. Defendant Jason New demanded that Plaintiff remove a magnetic light cover she had magnetically affixed to the light fixture as part of her accommodation request that was pending with OIE. At the time of this incident, this requested accommodation had been

      pending for over two months which indicates a lack of willingness on the part of Defendants to make reasonable accommodations. The light cover was critical to the Plaintiff as it alleviated over stimulation caused by the harsh lighting. This accommodation is normal for persons with Plaintiff's disability, it was reasonable, and was not a burden to the NMDA. Defendant Jason New indicated that the removal was demanded by a superior at the NMDA. Plaintiff politely declined to remove the magnetic light cover without a definitive timeline for when the light cover or an alternative could be "reinstalled," and she requested approval to work from home until a reasonable accommodation could be made. Defendant Jason New denied a compromise and again demanded removal of the light cover and indicated that failure to remove the device would result in a negative employment action being taken against Plaintiff. Plaintiff followed up that evening regarding the requested accommodation by providing Defendants with product safety specifications for the light cover. Defendant Jason New finally agreed to allow the cover as a temporary accommodation. Plaintiff continued to experience issues with the lighting, and in June of 2023 due to a mechanical issue, Plaintiff requested work be done on the lighting. This request took three weeks for facilities to correct illustrating a lack of willingness on the part of Defendants to make reasonable accommodations. Defendants continued to ignore Plaintiff's requests for accommodations concerning the lighting until approximately July of 2023 when other NMDA staff came to Physical Science Laboratory (PSL) location and complained to Tammy Bracamonte regarding the lights in PSL due to eye strain and headaches. The actions in these incidents demonstrate a lack of willingness to accommodate Plaintiff until other staff voiced similar issues from the same lighting conditions.

N.      On April 6, 2023, during the Plaintiff's presentation of the Logo Program relaunch marketing plan to Anthony Parra with Jason New and Felicia Frost in attendance, Plaintiff requested a full-time regular staff member complete the site visits of which Secretary Witte had requested. Anthony Parra asked why there was no longer a plan to use students, and Plaintiff indicated, based on her understanding of the discussion with HR, that students taking solo, overnight trips was against NMSU policy for student employees. Anthony then asked Plaintiff "Who told you that" and Plaintiff responded "HR" and he responded, "Well, I override HR." As Plaintiff was trying to follow policy, this comment and subsequent directive affected Plaintiff's general anxiety disorder.

O.      Sometime between April 7 and April 11, 2023, Plaintiff received a call from Felicia Frost, in her capacity as Acting Division Director, where she was told that there was a directive from leadership that Plaintiff was no longer to contact HR directly and that all requests were to go through Division Director, Jason New. This directive contradicted Plaintiff's understanding of policy. Contradictions in policy worsen Plaintiff's general anxiety disorder.

P.      On April 11, 2023, Anthony Parra sent Plaintiff an email accusing her of working with "Legal" (i.e., NMSU General Counsel Scott Field) to finalize documents without his authorization. As indicated above, the contact with the general counsel was not initiated by Plaintiff, and Plaintiff was following the standard operating procedures and consulting with her superiors in the chain of command. On this day, Plaintiff requested to be taken off the

  Logo Program relaunch to avoid further hostile interactions with Anthony Parra. Felicia Frost asked Plaintiff not to do this, and said she, Felicia Frost, would respond to Anthony Parra clarifying that the documents had been reviewed by divisional staff but were not ready for leadership review, which Felicia Frost did that day. The interaction with Mr. Parra are indicative of the hostile environment Plaintiff experienced and a lack of willingness on the part of supervisors to accommodate Plaintiff's neurodivergent disabilities.

Q. On May 8, 2023, Plaintiff and NMDA staff received word from USDA that the LFPA+ amendment had been accepted and was ready for signature by NMDA leadership. On this document, Plaintiff is listed as the Program Manager with a Program Manager's class 7 salary budgeted.

R. On May 22, 2023, Plaintiff received notification from NMSU to her personal email that the LFPA Program Manager position that Plaintiff had applied for on December 16, 2023, had been cancelled. The email indicated that the position would be reopened, and Plaintiff was encouraged to reapply.

S. On May 29th, 2023, Plaintiff met with Garrett Hargrove and discussed the position cancellation. Without revealing confidential information as a member of the search committee, Mr. Hargrove suggested that Plaintiff might be eligible for differential pay for performing responsibilities above her position classification similar to what he had been receiving for working in Albuquerque while performing Business Manager duties at a higher pay grade than his current position as a Senior Accountant.

T. On May 30th, 2023, Plaintiff sent an email to Cheryl Mason Herrera requesting information on how to request differential pay on the basis that Plaintiff was performing job responsibilities of a class 7 employee (Program Manager) and was currently listed as a class 5 employee (Ag Marketing Specialist, Intermediate). Plaintiff requested any instructions Plaintiff may need to complete the request so that Plaintiff could complete any forms or collect any substantiating documents that would be needed for Jason New to process the request when he returned from leave. This request was made directly to HR on the assumption that there would be a formal request process to complete in order for HR to process the request in compliance with NMSU policy. Jason New was on leave that week but he was copied on the message. This further demonstrates Plaintiff's desire to follow NMSU policies as following such standard operating procedures is necessary for individuals with a generalized anxiety disorder.

  a. On May 30, 2023, Cheryl Mason responded and provided no information on any steps Plaintiff needs to take to formally request differential pay, directing Plaintiff instead to Jason New as the person to process this request. Cheryl Mason copied Anthony Parra on this email.

U. On June 14th, 2023, Plaintiff received an email from Jason New that this request is under review, but no further information is requested.

V. On June 20th, 2023, Plaintiff sent out an internal email to #ALLNMDA requesting participation from coworkers in a social media campaign. Prior to the sending of this email, Plaintiff and four other NMDA colleagues had exchanged twenty emails revising the language of this email. During this lengthy exchange, Plaintiff forgot that the graphic

   template examples in the email had not yet been approved by senior leadership, which is not necessary for internal emails but is necessary before those graphics are posted online.
    a. Upon request from the graphic designer, Plaintiff sent an email clarifying the miscommunication about the approval of the graphic templates and apologized to Jeff Witte and Anthony Parra for sending the internal email prior to their approval.

W. On July 6th, 2023, Jason New requested a meeting the next day to discuss Plaintiff's differential pay request. Plaintiff agreed to his requested time and location.

X. On July 7th, 2023, Plaintiff met with Jason New regarding her differential pay request. During this meeting, Jason New denied Plaintiff's request for differential pay on the basis that she was not working any overtime, which was not the requested basis for differential pay according to class that had been provided by the Plaintiff. Jason New had not requested any substantiating evidence for the differential pay request from Plaintiff beyond the initial email. In this same meeting, Jason New gave Plaintiff a written version of a "verbal warning" outlining how her conduct violated the "efficient and ethical operations of NMSU." Plaintiff expressed serious concerns with the way this write up mischaracterizes her behavior and asked not to sign it. Plaintiff was told that if she signs it then, the warning will only exist in his internal files, but if she refused to sign it, it will go in her NMSU employee file. Given that Plaintiff was actively seeking work and that NMSU is the largest employer in Las Cruces for someone with her academic qualifications, she felt obligated to sign this warning to avoid these issues jeopardizing future employment opportunities. Included in this verbal warning are the above "incidents" regarding Plaintiff's reluctance to use student employees for solo, overnight site visits, Plaintiff's refusal to take down the light cover accommodation when demanded by Jason New on March 28th, a description of her collaboration with legal on document revisions which mischaracterized her actions as having gone around leadership in these discussions, and lastly, Plaintiff's mistake when sending out the #ALLNMDA email before the graphic templates had been approved. The foregoing all demonstrate a pattern and practice on the part of Defendants to not accommodate Plaintiff, and to retaliate against her for her requested accommodations and for her request to followlawful standard operating procedures and policies.
    a. Later in a meeting, Plaintiff reiterated that her request for differential pay is not on the basis of overtime worked, but on the basis of misclassification of her responsibilities. Plaintiff requested an additional evaluation of the request for differential pay on the basis that she was performing class 7 responsibilities of a Program Manager and was listed as the "Program Manager" in the LFPA+ project as it had been approved by USDA.
    b. Plaintiff informed Jason New during this meeting that it was her intention to discuss options for remediation with the Office of Institutional Equity about this "verbal warning." Since the verbal warning was provided in conjunction with the denial of differential pay and characterized incidents that Plaintiff understood as protected activities as reflecting negatively upon Plaintiff, the Plaintiff wanted to ensure that protected activities were not being used as a basis for denying pay increases or opportunities for advancement.

Y. On July 7, 2023, Plaintiff's temporary accommodation expired. This is the only signed, written accommodation the Plaintiff received during her 18 months of employment at NMDA.

Z. On July 17, 2023, Plaintiff made a formal complaint against NMDA, and Anthony Parra in particular, for disability discrimination using the portal provided by OIE.

AA. At sometime between July 7, 2023, and July 21, 2023, Plaintiff met with OIE to discuss the need for an expanded permanent disability accommodation that NMDA provide more instructions in writing to avoid future reprimands for misunderstandings of policies. Plaintiff specifically requested project management software to help manage workflows to avoid additional incidents like the #ALLNMDA email for which she was written-up and a request that directives be given in writing, with clear steps for approval, to prevent further characterizations of the Plaintiff's actions as being insubordinate, as opposed to a misunderstanding of verbal instructions. This request was made given the anxiety and differences in communication neurodivergent (individuals with a variety of disorders including depression, ADHD, and generalized anxiety) workers often experience in the workforce. These disorders are all covered under the New Mexico Human Rights Act, and all of Plaintiff's requested accommodations were reasonable and in no way affected her ability to perform the essential functions of her job.

BB. On July 21, 2023, Plaintiff had a site visit with Jason New at La Semilla in Anthony, NM. Jason New had previously indicated that NMDA's relationship with La Semilla was not as strong as it had been previously and asked that Plaintiff take steps to repair this relationship. During this site visit, Plaintiff and the current director of La Semilla, Cristina Dominguez, discussed the difficulties of trying to get construction contractors to work with women leaders in Southern New Mexico. Plaintiff related a story about a difficult contractor from her time as an agricultural business consultant outside of her work at NMDA to show empathy with the experiences of La Semilla. Plaintiff had previously observed NMDA staff relate their experiences in their personal pecan orchards, farms, and ranches to constituents in order to build rapport based on shared experiences of the difficulties one faces in agriculture and believed this was an acceptable way to relate to constituents on that basis. This was subsequently used against Plaintiff by Defendants in multiple situations and events in retaliation for her seeking to utilize her accommodations.

CC. On August 1, 2023, Plaintiff requested to work from home in line with her accommodation and provided specific tasks that will be completed while she was working from home, and is told by Jason New, in violation of her accommodation and the New Mexico Human Rights Act, that the tasks she requested can be completed in the office and she was instructed to come in to the office despite her detailed explanation of why she needs to work remotely for these tasks in order to be accommodated for her disability and such request was reasonable and would have allowed Plaintiff to perform the essential functions of her job

DD. On August 11th, 2023, Jason New requested a meeting in his office. During this meeting, he informed Plaintiff that NMDA was cancelling the Program Manager position on which she was basing her request for differential pay, and that Plaintiff would not be receiving differential pay. During this meeting Jason New also provided Plaintiff with

another verbal reprimand mischaracterizing an awkward conversation she had with a custodian and for using her government position to solicit consulting clients during aforementioned site visit with La Semilla when discussing difficulties with contractors as women. Desiree Stephens was a witness to the exchange with the custodian and Plaintiff suspects that Mrs. Stephens may have provided this incident upon request from Jason New. Plaintiff denied that a fair interpretation of the conversation she had with a custodian was inappropriate and based on her well-documented disabilities was something that should have been viewed in light of her disabilities, and based on information and belief that Jason New was using the interaction as a ruse to retaliate for her requested accommodations and differential pay. Further, Plaintiff denies the characterization that Mr. New used to define the La Semilla meeting, and based on information and belief that this was another ruse to retaliate against Plaintiff for seeking reasonable accommodations and fair compensation under the New Mexico Human Rights Act.

EE. On or around August 17, 2023, Plaintiff met with Aisha Guitierrez on Zoom to discuss her complaint against NMDA for disability discrimination.

FF. Sometime in August/September, Jason New and Anthony Parra met with Mari Longpre in OIE to discuss Plaintiff's accommodations. In this meeting, Anthony Parra refuses the request for project management software, and refused both options for reducing miscommunications about requested work including an accommodation that either minutes be taken or that Plaintiff be allowed to record meetings and that requests for tasks be provided in writing to allow Plaintiff to perform her work duties in line with policy without facing further verbal or written warnings that would adversely affect her ability to gain future employment at NMSU. These requests by Plaintiff are all reasonable under the New Mexico Hunan Rights Act.

GG. Sometime between September 5 and 18, 2023, NMDA's Marketing and Development team was in Albuquerque for the New Mexico State Fair. During this time, Plaintiff was required to work in-person at the fairgrounds every day except Sunday the 10th, set up for the event required long days in 80+ degree buildings with no HVAC, and all instructions for activities were provided verbally by experienced staff. These circumstances exacerbate both ADHD and generalized anxiety disorder. Plaintiff recognized that she was overstimulated and made efforts to work independently in a way that would minimize her stress. Despite these efforts, Desiree Stephens would frequently issue commands at Plaintiff. In one such incident towards the end of the day on September 5th, Mrs. Stephens commanded Plaintiff not walk on the temporary red carpet she was installing to which Plaintiff responded that she could not do that, and that it was on the floor in a state fair building so it was going to get dirty anyways so there was no point in the Plaintiff walking an extra few hundred feet while exhausted or risking injury to jump over the carpet to delay the inevitable. After this incident, Desiree Stephens refused to collaborate with Plaintiff for the remainder of Plaintiff's time at NMDA despite being the Program Coordinator assigned to the Logo Program which was one of Plaintiff's primary responsibilities. No attempts at resolving Mrs. Stephens's dislike of Plaintiff are ever made by NMDA, only temporary mediations for the tasks at hand. Several of the incidents described in the probationary evaluation received on November 30th, 2023 are based on the

   reports from Desiree Stephens. This illustrates Mrs. Stephens colluded with Jason New in his efforts retaliate against Plaintiff for the disability discrimination complaint made to OIE by being rude and uncooperative with Plaintiff despite being her subordinate on the Logo Program, and that manufactured conflict was later reported by Mrs. Stephens as evidence against Plaintiff. Plaintiff perceived this as evidence of "workplace mobbing" – a tactic of hostile workplaces to force people with disabilities to quit in lieu of offering them reasonable accommodation and equal opportunities.

HH. On September 14, 2023, Plaintiff received notification from Accreditation, Outcomes & Academic Planning that she had an electronic effort certification due to document the percentage of effort she has performed in each of her paid responsibility categories including the LFPA+ grant, Specialty Crop Block Grant program, and/or General Fund Appropriations for other duties. Plaintiff responded to this email that she could not complete the electronic effort certification as provided by Felicia Frost because it misrepresented her effort allocation percentages and job title and Plaintiff was unwilling to lie on certification documents that would be sent to USDA. Plaintiff also communicated that she did not feel comfortable bringing a request for change to a supervisor as would normally occur because of an active complaint against NMDA for disability discrimination which named both Jason New and Felicia Frost. Without Plaintiff's consent, Laurie Leyva from Accreditation, Outcomes & Academic Planning forwarded this message to Anthony Parra thus notifying him, prior to OIE, about the forthcoming notice of allegations. This incident led to additional retaliation against Plaintiff by Defendants, violated her reasonable expectations of accommodations, violated standard operating policies and procedures, and violated whistle blower protections.

II. On September 15th, 2023, Jason New called Denise Miller, the Executive Director of the New Mexico Farmers' Marketing Association and a key partner on the New Mexico LFPA program, while at the airport. He informed her that NMDA now has approximately $190,000 available on LFPA project and asked her if she can spend that funding.

  a. That $190,000 accounts for removing the Program Manager position and redirecting a substantial portion of the personnel funding from both that position and the Program Specialist position held by Gretchen Gilbert.

  b. During this call, Jason New also requested information about unprofessional behavior by the Plaintiff from Denise Miller so that he could use the information as part of his retaliation scheme.

  c. The amendment to reallocate these funds was coordinated over the next few weeks. Despite the Plaintiff playing a key role in the LFPA+ amendment, Plaintiff was not informed of this amendment and was only brought in for one discussion pertaining to these changes. Jason New mentioned to Plaintiff that it was his intention to lower the effort for Plaintiff and Gretchen Gilbert's positions from 85% to 30% for LFPA-related responsibilities. Plaintiff strongly objected given that Gretchen Gilbert was leaving in late Spring 2024 to move to Florida and that NMDA was unlikely to be able to replace her with someone as efficient. Plaintiff also expressed concerns about the person in her position being able to adequately oversee the work of the program and the replacement program specialist at only 30% effort. Based on

information, belief, and witness testimony it is Plaintiff's position that these actions were taken in retaliation for her requests for accommodation both to the OIE and Jason New.

JJ. On September 25, 2023, Defendant, Jason New, attended the first biweekly LFPA Task Force meeting since January 2023. He was listed as the Primary Investigator on this grant; however, Plaintiff had been taking the lead on all meetings and general activities of the program between January 2023 and September 2023 prior to NMDA leadership being informed of the impending Notice of Allegations from Accreditation, Outcomes & Academic Planning. Defendant New's only leadership activity on the program between January 2023 and September 25, 2023, was providing revisions upon request or signing off on certain initiatives and activities as they were presented by Plaintiff or Program Specialist Gretchen Gilbert.

KK. On September 26, 2023, OIE delivered the Notice of Allegations of a lack of accommodation and retaliation to NMDA.

LL. On October 2, 2023, Plaintiff indicated an intention to work from home to Felicia Frost in line with the requirements of her accommodation. Plaintiff was told that Felicia Frost will need to verify "coverage" before granting the work-from-home request. Plaintiff pushed back and indicated that coverage is irrelevant to her request and not required as part of her documented accommodation. Plaintiff submitted a request for clarification from OIE because her accommodation is not being honored, and Mari Longpre responded that the need for "coverage" does not pertain to Plaintiff's need for accommodation and should not factor into supervisor decisions about whether Plaintiff can work from home. In Plaintiff's probationary evaluation two months later, this incident was characterized as unprofessional and demonstrative of the Plaintiff's lack of willingness to be a team player – despite the communication from OIE clearly showing Felicia Frost's actions were not in line with the reasonable accommodation to which NMDA had agreed. This illustrates the harassment and retaliation Plaintiff experienced when exercising her rights to reasonable accommodation under the New Mexico Human Rights Act.

MM. On November 28, 2023, Plaintiff received a request from Jason to come in the following morning for a meeting to discuss her probationary evaluation. Plaintiff requested that an OIE rep familiar with her Notice of Allegations be present because she is concerned about discrepancies in how Jason New had verbally related information that was not captured in written documents during the previous two warning meetings she had attended. This request was denied, and Plaintiff was offered an HR rep instead. Plaintiff expressed discomfort with the short notice, unfamiliarity of the HR rep offered with the Notice of Allegations, and a desire not to come into the office for this discussion, knowing it would likely leave her in emotional distress based on previous warnings she had received and because her documented disabilities adversely affect her ability to maintain emotional regulation when distressed. This request was denied. This request was a reasonable accommodation based on Plaintiff's well documented disabilities and based upon information and belief, and witness testimony was made in retaliation for her seeking to ensure her accommodations.

      a.   This episode and denial of the request caused physical manifestations of symptoms common in persons with ADHD, generalized depression, and neurological disorders such as Autism Spectrum Disorders such that Plaintiff was up all night crying, hyperventilating, and experiencing heart palpitations and gastrointestinal distress and called in sick the next day, November 29, 2023.

NN.      On November 30th, 2023, Plaintiff received a written copy of her evaluation via email from Jason New. This evaluation extended the Plaintiff's probationary period for another 6 months and included numerous personal grievances against the Plaintiff starting in or around September 15, 2023 – the date when NMDA was notified by Accreditation, Outcomes & Academic Planning that the Plaintiff filed an OIE complaint against the department. Unlike other performance evaluations the Plaintiff and colleagues received during her time at NMDA, Jason New did not seek information about the activities performed by the plaintiff during this time, and the evaluation contained only a few references to the actual work performed by the Plaintiff during her first year of employment at the agency. Instead of reporting on work performed, Plaintiff is described as "condescending," "rude," and "not a team player" with justifications often referencing behaviors commonly found in people with ADHD, or times when the Plaintiff was advocating for the fair utilization of her accommodation such as the incident with the light cover, the incident with Felicia Frost needing "coverage," and incidents at State Fair reported by Desiree Stephens and Felicia Frost when Plaintiff was overstimulated with a lack of privacy and non-stop verbal commands with no written instructions. Based on the evidence referenced in this evaluation, most of the determinations of performance in this evaluation seem to be based on complaints from staff within the division, not based on the "Individual Goals" or the measurements of their completion as agreed upon in the first evaluation received. Plaintiff perceived this as further evidence of "workplace mobbing."

OO.      Sometime between December 1, 2023 and December 15, 2023, Plaintiff called OIE and asks what was needed to obtain "Supportive Measures" as they are outlined in ARP 3.25, Part 7 in order to protect her rights as a "Complainant" because of the extreme emotional distress resulting from her probationary evaluation which she believed was retaliatory. Plaintiff requested information about what was required for an expanded disability accommodation or a temporary leave of absence because she was experiencing an increase in symptoms related to her Generalized Anxiety Disorder after receiving her probationary evaluation. Rejection dysphoria is a common symptom of ADHD and is triggered by personal attacks such as those placed in her permanent employee file through the probationary evaluation and potentially jeopardizing future employment opportunities at NMSU. Not wishing to be subject to increased scrutiny from colleagues during a period of intense emotional distress, Plaintiff asked what was needed to take a leave of absence and receive an expanded accommodation as part of her supportive measures. Based on instructions from OIE, Plaintiff went to her primary care provider, Laura Ortega, and requested a letter detailing the need for greater work from home. After submitting this letter and submitting it to OIE, OIE indicated that they could not accept this letter and that the Plaintiff needed to get a new form completed. To the best of Plaintiff's knowledge, no

    supportive measures were ever specifically offered to her during this time as a Complainant, simply the standard OIE accommodation process.

PP.    On December 7, 2023, Plaintiff filed her case with the Equal Employment Opportunity Commission.

QQ.    On December 21, 2023, Plaintiff emailed HR and copied Mari Longpre with OIE with detailed information about how the probationary evaluation was inaccurate and retaliatory on the basis of disability and an ongoing complaint. Donna Ottaviano, the Director of People Relations, replied that afternoon that probationary evaluations are "not subject to appeal" this determination by Donna Ottaviano means that NMSU's policy for people with disabilities provides no pathway for remediation should they face disability discrimination in the first year of employment should they report that discrimination and face retaliation through evaluations and adverse employment actions. An a priori rule that bars individuals with the ability to request, obtain, and utilize reasonable accommodations is a clear violation of the New Mexico Human Rights Act.

RR.    On January 2024, Laura Ortega, CNP completed the required form for the expanded disability accommodation based on symptoms reported by the Plaintiff in a visit. As of the Plaintiff's termination on May 30, 2024, no changes had been made to the Plaintiff's disability accommodation based on this form, or the previous requests made in July 2023. In the 10 months between the expiration of her temporary accommodation and Plaintiff's, NMDA had effectively denied Plaintiff reasonable accommodations for a documented disability and had only made 5 attempts to negotiate expanded accommodation. During this time, Plaintiff was pressured to be in the office at least 3 days a week to avoid further retaliation and frequently went into the office experiencing extreme emotional distress and was forced to relieve gastrointestinal distress in a shared bathroom, and cry in her cubicle within 15 feet of 5 coworkers at least once weekly. As a result of this distress, Plaintiff required prescription anti-depressants and beta blockers to try to manage her symptoms in order to be able to continue working without expanded accommodation. Then on January 29, 2024, upon realizing that NMSU OIE/NMDA were not concerned with Plaintiff's urgent need for accommodation, Plaintiff reached out to Aisha Guitierrez about the status of the complaint. Aisha Guiterrez responded the same day that it is still in progress and offered no timeline for when the investigation will be complete.

SS.    On February 9, 2024, EEOC conducted a phone interview with Plaintiff about the details of her complaint.

TT.    On February 13, 2024, EEOC gave notice to NMDA/NMSU of Plaintiff's complaint.

UU.    Sometime between February and March of 2024, two offers for expanded accommodation were given by NMDA through OIE to the Plaintiff but included unacceptable changes that allow management to rescind accommodation at their discretion without prior notice despite documentation from the Plaintiff that being demanded to go into the office with no prior notice or legitimate business reason was exacerbating the

negative symptoms of her generalized anxiety disorder. Such accommodations amount to no accommodations and are clear violations of Plaintiff's rights under the New Mexico Human rights Act. Most notably, a request by NMDA that the Plaintiff use an "Alternative Work Arrangement" form – a form which explicitly notes at the top that it is NOT to be used for disability accommodations because it concerned a fixed schedule. Additionally, NMDA agreed to improve minutes taken at division meetings, and agreed to the need for project management software, but refuses to commit to a plan to provide instructions to the Plaintiff in writing for tasks, or to a project management software platform for which NMDA/NMSU has an active license.

VV. Sometime between December 2023 and April 2024, Plaintiff was at a party for a coworker in the main PSL conference room used by NMDA Marketing and Development employees. During this time, employees discussed at length their enjoyment of the show "Love on the Spectrum" – a show which depicts people on the autism spectrum dating and the struggles with communication and social interactions this entails. These conversations included many jokes from NMDA Marketing and Development employees present at the expense of the people with Autism Spectrum Disorder featured on the show, and further illustrated the hostile working environment at NMDA towards people with neurodivergence.

WW. Sometime between March 1 and March 21 of 2024, Jason New informed Plaintiff that her annual evaluation is coming up and requested a meeting. Given the contents of the previous evaluation, Plaintiff strongly suspected this would be another retaliatory evaluation and requested that she not be forced to meet about this evaluation without it being counted further against her in her performance evaluation. This request was denied by Jason New. In lieu of not meeting, the Plaintiff requested either permission to record the meeting, or a "neutral" NMSU/OIE staff member be made available for this meeting. Plaintiff considers "neutral" to be someone whom Anthony Parra does not have hiring/firing power over and is not a named party in the initial OIE complaint. Office of People Relations (NMSU's HR office) refused to offer a neutral staff member. OIE also refused to offer a neutral staff member. NMDA refused to allow Plaintiff to record the meeting. Ultimately, Julie Maitland, one of the longest tenured division directors at NMDA, arguably the 3rd ranked person in the organization behind Jeff Witte and Anthony Parra, who had worked with Jason New for over 15 years, and whom Plaintiff had never met, was offered as the "neutral" witness.

XX. On March 28, 2024, Plaintiff met over Zoom with Jason New and Julie Maitland about her annual evaluation. Plaintiff contested several of the ratings provided in the annual evaluation and provided evidence substantiating that ratings were not an accurate reflection of the quality of her work. Jason New agreed that several of the performance metrics should be raised given this evidence, but notably refused to raise ratings related to service quality despite frequent praise from external collaborators about her performance. Jason New further refused to raise rating pertaining to "Valuing Diversity and Inclusion" despite her own membership in a protected class. While Jason New promised to update this evaluation

> based on the discussions during this meeting, a final copy was never received by the plaintiff prior to her termination.

YY. On April 11, 2024, Plaintiff received notification that an NMSU branch campus in Alamogordo would not be hiring her as faculty. Based on witness testimony and evidence Plaintiff has reason to believe that NMSU – Alamogordo hiring committee staff shied away from her as a candidate after the site visit because of the probationary evaluation placed in her file which she was unable to appeal.

ZZ. On April 11, 2024, Plaintiff received notification that NMSU OIE had drafted their findings from the complaint that Plaintiff initiated in July 2023. In this complaint, NMSU OIE had made no attempt to interview any witnesses outside of Plaintiff's division other than Anthony Parra and Cheryl Mason, both named in the complaint, and Jeff Witte, who had very little direct contact with Plaintiff. Plaintiff had requested several witnesses including former NMDA female employees, and external partners who could attest to previous hostile interactions with Mr. Parra as well as to the quality of Plaintiff's work outside of the hostile environment created by Mr. New in collaboration with his subordinates. NMSU OIE went on to interview Denise Miller.

AAA. May 30, 2024 was Plaintiff's last day employed with NMDA.

BBB. Sometime in July of 2024, NMDA posted an Ag Marketing Specialist position performing many of the duties performed by the Plaintiff in regard to the Logo Program and the LFPA program. This position was posted as a class 8 position, one classification higher than the class 7 differential pay that had been requested by the Plaintiff in 2023 while performing those duties as a class 5 employee.

CCC. On August 13, 2024, over a year after the initial complaint, NMSU OIE issued a final determination on the findings of the investigation noting that there was insufficient evidence for a finding of discrimination on the part of Anthony Para. In this finding there was a note from OIE that read: "OIE does note, while it appears that Complainant would have been disciplined regardless of her accommodation, that the discipline was issued the day after the expiration of her temporary accommodation is extremely concerning. Indeed, that the matter of the light cover was raised at all, over three months after the matter was resolved, is unusual, and if Respondent had been tied to this discipline, may have resulted in a finding of retaliation. OIE will follow up separately about these concerns with Respondent and the other management involved in this matter."

### COUNT II: DISCRIMINATION BASED ON GENDER
### (as to all Defendants)

20. Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs and adopts by reference each one as though they are fully set forth herein.

21. The elements of discrimination based on Gender are: (1) the plaintiff is a member of the protected group (female); (2) that she was qualified to continue in his position; (3) that her employment was terminated; (4) and that his position was filled by someone not a member of the protected class or if she can show that she was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained. *See Smith v. FDC Corp.*, 1990-NMSC-20, ¶2, P2d 437.

22. Dr. Pearson was terminated because of her gender (female) as evidenced by the following instances:

    A. Despite frequent references to her passion for grilling meat, Plaintiff was never invited to join the grilling team at NMDA-hosted events. The grilling team at NMDA-hosted events was exclusively male, while the decorating, serving and dish-washing teams were almost exclusively women with the occasional male student helpers.

    B. Plaintiff was reprimanded for not being a "team player" in her probationary evaluation for not helping with the annual conference planning committee or other "optional" responsibilities. The NMDA annual conference planning committee was run almost exclusively by female employees at NMDA and in 2024 only had a single male member whose wife was on the committee such that serving on the committee allowed him to spend time with his wife during working hours.

    C. NMDA systematically denied women opportunities for advancement or fair compensation for duties performed and retaliated against Plaintiff for not being a "team player" when she requested fair compensation, differential pay, and a workload commensurate with her classification level.

    D. During Plaintiff's time at ODA, only two of eight division directors were female, every program coordinator – the lowest non-student, non-temporary classification - was female, and the vast majority of crop and fuel inspectors were male.

    E. During Cheryl Mason Herrera's testimony for the OIE complaint, she alleged that the Plaintiff gave her and Anthony Parra "dirty looks" after the "I overrule HR" incident because the Plaintiff had a neutral, non-smiling face when Plaintiff encountered Cheryl Mason and Anthony Parra. Cheryl Mason Herrera also testified that the Plaintiff's inquiry about student employee travel had an "aggressive tone" when Plaintiff expressed concern about the lack of leadership's concern regarding students traveling overnight, without supervision in state vehicles to remote, rural areas. These characterizations suggest that NMDA leadership held expectations for Plaintiff, as a

        female employee, that she smile and perform friendliness in order for her actions to be received positively by human resources and senior leadership.

    F.    In the 2 years that the entire NMDA staff have been at the PSL location, multiple issues have been raised about the lighting in PSL, and accommodations have not been uniformly provided. Non-managerial female staff have been reprimanded for not going through proper channels to adjust their lighting, while senior male managers have been able to turn off and adjust lights in their program areas without going through facilities without consequence.

### COUNT III: VIOLATIONS OF ARTICLE II, §§ 4, AND 18 OF THE NEW MEXICO CONSTITUTION AND NEW MEXICO CIVIL RIGHTS ACT
### (as to all defendants)

23.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs and adopts by reference each one as though they are fully set forth herein.

24.    The New Mexico Constitution decrees that "[e]quality of rights under law shall not be denied on account of the sex of any person." N.M. Const. art. II, § 18.

25.    The New Mexico Constitution also guarantees that seeking happiness and the enjoyment of "life and liberty" is a "natural, inherent and inalienable" right. N.M. Const. art. II, § 4.

26.    A public body or person acting on behalf of a public body "shall not subject or cause to be subjected any . . . person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico." NMSA § 41-4A-3.

27.    Article II, §§ 4 and 18 of the New Mexico Constitution provides more expansive protections than that of the United States Constitution.

28.    All defendants were acting within the scope of their employment with an institution of higher education.

29.    Plaintiff was denied equal opporutnity to employment on the basis of sex when she was terminated from NMDA.

30. Plaintiff was denied her inherent right to seek happiness when she was arbitrarily denied oppourtunies for advancement and fair compensation, then retaliated against for making such requests.

31. The facts set forth herein establish a violation of Plaintiff's rights established under the New Mexico Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. Award actual and compensatory damages sufficient to make Plaintiff whole;

B. Award punitive damages in an amount to be determined at trial

C. Award pre- and post-judgment interest as provided by law;

D. Award attorney fees, litigation expenses, and costs;

E. Removal of the retaliatory complaints and evaluations from Plaintiff's NMSU Employment files.

F. Grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**LAW OFFICE OF
RYAN D. BAUGHMAN, LLC**

*Ryan D. Baughman*
Ryan D. Baughman, Esq.
814 Marquette Ave NW
Albuquerque, NM 87102
(505) 675-0732
Ryan@NMLawOffice.com
*Attorney for Plaintiff*